Good morning, your honors. May I please report? And my colleagues in the state, my name is Ian Bonds from the Office of State Appellate Defender on behalf of Mr. Simons. I'd like to devote my argument time this morning to the argument that Mr. Simons is not proven guilty on a reasonable doubt of aggravated criminal sexual abuse and just for time purposes not discuss the indecent solicitation. But a lot of my comments cross over between both. To begin with, of course it is not the function of this court to retry Mr. Simons and reweigh all the evidence, and Mr. Simons is not asking this court to do that. What this court should do is reverse and vacate his convictions because the evidence was so unsatisfactory and illogical to sustain a conviction beyond a reasonable doubt. And there are several reasons for that. The first of which is that the trial court's finding of fact cannot be reconciled with itself essentially. And I say that because It can't be reconciled with itself? I mean, it's logically inconsistent with itself. I'll testify at trial that his mother, his father, and the quote-unquote woman at the building, which I think we can only assume is Sarah Pasola Miller, the DCFS interviewer, all told him what to say. And he did provide some specificity with respect to that when he said Mr. Simons had touched him on previous occasions and then said his father told him to say that. And there are two logical outcomes from that. The first one is that Mr. Isle was in fact coached, and that should make the rest of his testimony extremely suspect and unreliable. The other outcome is that he was not coached, but his testimony that people told him what to say should cast some What do you, how do you, what's your comment as far as her being the 115 hearing? It was a lot of testifying. Respect to your, I don't believe Isle testified at the 115-10 hearing, but that hearing is to determine whether he or she's statements can come in, not the weight. So your position is because it's limited, it was limited, that it really doesn't affect your issue? Well, my position, Your Honor, is that the statute says that that hearing doesn't determine the weight of the evidence. No, I realize that. That's to the prior effect. But your position is the hearing was really limited to a visibility. Yes, that's correct. But in that hearing, the witnesses testified that they didn't coach the witness, right? I believe Isle's mother said that, yes. Her? Isle's father and Sarah Pissola-Miller were never, Sarah Pissola-Miller was never asked that question, and Isle's father did not testify at that hearing or at trial. Well, Lindsey, Fikon, and Pissola-Miller, they testified? Yes. And all of them indicated that, or at least there was no testimony that this child was coached? There was no testimony from Fikon and Sarah Pissola-Miller either way. That's correct. Do you think that when a child is required to say something over and over and over that that's coaching just because of the duplicity of statements? Isn't that your argument here? No, Your Honor. I mean, the child clearly ran out of a room naked, right, and made a spontaneous utterance of some sort, not within the legal term spontaneous utterance, but within my term. I'm not using it under the rules of evidence. But the child's naked, runs out of a room, and makes this exclamation. Do you think that was coached? Well, respectfully, he doesn't make a statement on his own. His mother is the one that puts the question to him, specifically, did he touch her pee-pee, and he says yes. But beyond that, Isle's mother also testified that she didn't put that into the written statement when she talked to police. So this was all after the fact and not something that she memorialized that day. And, Your Honor, you make a fair point that... So you're saying that she was not credible because of that. Her credibility is in doubt. I think that's a fair statement, yes. And you make a fair point that it's a bizarre situation to begin with. But this statute doesn't criminalize bizarre, even socially maybe unacceptable behavior. It criminalizes criminal conduct. And that brings me to the fact that Isle's testimony is itself illogical. And you have to believe multiple versions of events, essentially, in order to believe him. And what I mean by that is he says the touching happened in the morning. It happened upstairs. It happened in the bathtub. It happened the first thing that happened when they walked in the front door. But he provides no consistency for these, and he provides no temporality to them. He doesn't say one day this happened, one day this happened. They're all just one and the same in terms of his testimony. And the only detail he ever gives is he touched my pee-pee. And I keep using that phrase because he never actually identifies pee-pee as being penis. When he's interviewed by DCFS, he's asked to identify the groin area on a male and female drawing, and he refers to it as a pee-pee on both. And he never goes beyond that. He never says, this is a penis. I know what that is. Well, how old was his child at that time? At trial, he was seven. No, no. When he was asked about the dog. Oh, five. I doubt he would know the word penis. That might be true, but he also doesn't ever describe anything, even without knowing the correct anatomical terms. On top of that, the only thing he can ever be said to have said beyond he touched my pee-pee is when Sarah Pasola Miller gives him a leading question where she says, when James touched your pee-pee, what did he touch your pee-pee with? His hands. And he says, yeah, before she's allowed to say, or something else. That's the only detail he ever gives beyond the flat assertion, he touched my pee-pee. But beyond that, there are also a number of other portions of his story where he says, his clothes were off when he left the house, his clothes were on, the beach was open when they tried to go, the beach was closed. And on top of that, he says a few things that I think are concerning in terms of his reliability for a seven-year-old. And one of those is he's asked very straightforwardly about one of these times when someone told him what to say. And his response is to count out loud from 1 to 21. And when the circuit court says, why are you counting? He says, because just to tell me the lights are on. I did notice his testimony was a bit bizarre. But did anyone ever evaluate the child's mentality, his IQ level? No, there is nothing in the record to reflect what, if anything, is there. But I don't know that the conclusion is important. What is important is it seems that this child has some sort of problem relating to questions that are posed to him or relating to what's going on around him, what's happening to him, events that are happening near him. And that all should raise some concern about the reliability of his testimony. And like I said, believing his testimony is sort of inconsistent with itself because you have to believe all of these strange things he's saying. Do you think the child would have had to testify in order for your client to have been found guilty? What if the child had never testified? Do you think just generically that someone can be convicted of these crimes without a child testifying? That's a good question, and I'm blanking on whether 115.10 allows that. I don't remember. Maybe you can answer on the reply. I'm not sure it's in the briefs, but I'm sorry, I don't have an answer. With the limited time I have left, I just want to talk about one last point, which is the intent element of this. And that is that this crime requires sexual conduct for the purpose of sexual gratification or arousal and not just incidental touching or accidental touching. And this goes back to IL's difficulty ever describing any of the context here. There is nothing that delineates this or takes it out of the realm of accidental or incidental and puts it into the realm of criminal conduct. And, for example, if we take his statement that it happened in the bathtub, that could easily be something accidental. So unless Your Honors have no further questions, I would just ask this Court to reverse the judgment of the Circuit Court and vacate Mr. Stanton's conviction. I don't believe we do. Thank you. Thank you. Counsel. Counsel. May it please the Court. Good morning, Your Honors. Counsel. Good morning. My name is Erin Wilson-Lagler, and I appear on behalf of the State. This Court should affirm defendants' convictions because these arguments on appeal are a request to reassess witness credibility and to reweigh the evidence. Defendants' arguments ignore the fact that in a bench trial setting, the trial court sitting as the trier of fact is required to weigh the evidence, determine witnesses' credibility, and resolve any conflicts that it finds in the evidence. On appeal, these factual findings are entitled to great deference because the fact finder is in a far superior position to resolve these factual matters. Indeed, our Supreme Court has long held that a reviewing court will not substitute its judgment for that of the fact finder on issues involving the weight to be accorded to evidence or the credibility of the witnesses. Instead, when considering an appeal involving the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Moreover, all reasonable inferences are to be drawn in favor of the State as opposed to the defendant. With these principles in mind, we turn to the arguments presented in appeal. A defendant takes issue with the sufficiency of the evidence underlying both of his convictions, those being aggravated criminal sexual abuse and indecent solicitation of a minor. What about the argument of intent? In what respect, Your Honor? What evidence was there that you believe circumstantially would show intent since he didn't testify? Intent to? I mean, we can infer intent based on circumstantial evidence. So what evidence would you point to for the intent to obtain sexual gratification? Certainly, Your Honor. The circumstances surrounding the allegations are what give rise to the defendant's intent. And the following facts are sort of relevant to Your Honor's question. Aisle's mother, Sarah, walked up to the defendant's bedroom door intending to surprise the defendant and Aisle testified that she had sort of a fun, joking relationship with the defendant. So she was intending to surprise them. And as she approached the bedroom door, she heard a wonderful accordion being played. Are we good? Are we clear? Okay. Upon approaching the door, Sarah heard defendant ask Aisle whether or not he wanted to lie on top of him. And upon hearing this request, Sarah attempted to enter the room, but she was blocked by defendant who held the door shut. When she finally entered the room, she discovered her son completely nude and defendant wearing only his boxer shorts. And she turned to her son and asked whether defendant had inappropriately touched him. And Aisle responded yes. These circumstances give rise to a guilty conscience and support Aisle's allegations that the touching occurred because there's no innocuous reason for the child to be completely nude under these circumstances or for defendant to be wearing only his underwear. This is not, they were not in the bathroom. He was not giving the child a bath at the time. And despite it being a hot summer day, the record affirmatively shows that defendant's room was air conditioned. So it's unclear why any of the clothing was removed. And on appeal, defendant also points to, he attempts to argue that the child enjoyed being naked, pointing to a single event wherein the child thought that he could go swimming in a public fountain. And so he started to remove his clothes to go swimming. But this is an isolated event and it certainly does not show a habitual desire to be naked. So taking these together, it's, there's not really any other inference to draw other than the inference that this was done for sexual gratification. And turning to the other element of aggravated criminal sexual abuse that is at issue in this appeal, excuse me, defendant points to several inconsistencies in Aisle's testimony and argues that these inconsistencies render the testimony so wholly unreliable that it should be rejected outright. However, witness credibility is not an all or nothing inquiry. A finder of fact is permitted to give credence to specific portions of a witness's testimony and then disregard other portions. In fact, resolving inconsistencies is a task that is specifically designated to the finder of fact. But the child's testimony at trial was a bit bizarre. I mean, right? It was bizarre, Your Honor. But we're also dealing with a five-year-old little boy that the trial court specifically noted was very active and clearly his attention was waning during the testimony. And reading the record, it becomes clear that the longer that he testified, the less he was paying attention to the questions and started doing these bizarre outbursts, such as counting to 21 and making notes about the lights being on. But this overlooks the fact that Aisle's account has not changed throughout these proceedings or throughout the investigation. He continually stated that defendant had touched him and consistently describing it as defendant had touched his pee-pee. Now, defendant complains on appeal that that's not sufficient because it doesn't describe the detail surrounding the touching. But more specific details were not necessary to allow a finder of fact to determine that Aisle was telling the truth when he said the defendant inappropriately touched him or to find that defendant actually did touch Aisle. Given the fact that Aisle was only five years old at the time, it is not unreasonable to believe that he might not have known the words necessary to sufficiently describe how the touching occurred. And this inference is actually supported by the CAC counselor's testimony where she described, I'm sorry, it's supported by the video of the CAC interview, where Aisle attempted to pull down his pants and show how defendant touched his penis when the CAC counselor asked him to describe how the touching occurred. Excuse me. With respect to the allegation that Aisle was coached by essentially every adult involved in this case, the trial court explicitly rejected that argument below on the record. While it is true that Aisle responded affirmatively in response to the question of whether he was told what to say, the record makes clear that at that point the child's attention was waning. This was occurring at the end of his testimony. And as noted, the trial court explicitly resolved that credibility issue by stating on the record that the trial court did not believe that the child was coached. And that inference is also supported by the CAC counselor's testimony that she likewise did not believe that the child had been coached to say that defendant had inappropriately touched him. These arguments simply raise issues relating to Aisle's credibility. And Aisle's credibility was discussed at length by the trial court. And the trial court's factual findings with respect to Aisle's credibility were neither unreasonable or irrational, such that no rational person could have believed the allegation that defendant touched him. And for those reasons, the State presented sufficient evidence to prove defendant guilty of aggravated criminal sexual abuse. With respect to the indecent solicitation of a minor conviction, defendant asserts that Sarah's testimony was uncorroborated, and again that the State failed to present sufficient evidence that the solicitation was done for sexual gratification. Given that defendant was actually convicted of aggravated criminal sexual abuse, the State was only required then to prove that defendant solicited Aisle to perform an act of sexual conduct. And in this case, that would be any touching involving Aisle for the purpose of sexual gratification. And I'll defer to my previous argument with respect to sexual gratification, because they are the same for both convictions. With respect to the corroboration argument, our Supreme Court has long held that the credible testimony of a single witness is sufficient to sustain a conviction. So the child would not necessarily have had to testify in this case? Your Honor, I don't believe so. I believe that Section 115-10 sets forth a procedure wherein the child victim might not have to testify, but I think that there are specific findings with respect to the reliability hearing that have to be made in those circumstances. Given that the child did testify here, I'm not sure whether those extra procedures were complied with or not. No, I don't. But the reason I asked is they did allow the hearsay testimony in. Correct, Your Honor. And that required a certain base finding under the statute. Of reliability, yes, Your Honor. And it is the State's position that the reliability hearing determines whether or not the hearsay statements were sufficiently reliable to be admissible at trial. The fact finder is then tasked with determining the credibility of that witness and of those statements, and the trial court here determined the credibility of IL on the record. And for those reasons, the State will rest on the remaining points raised in its brief and ask that this Court affirm the defendant's convictions. Thank you, Your Honors. Thank you. Counsel? On the subject of 11510, I still don't know for sure. A very large part of me wants to say that that would pose a confrontation problem, but I don't know that I would stake my life on it without having the statute in front of me, so I apologize for that. Well, you can be convicted of this crime having done so with a 2-year-old, for example. Sure. Right? You don't expect a 2-year-old to testify. That's a fair point. And in this case, though, even if IL didn't testify and it was just his hearsay statements coming in, I still don't think it makes a difference one way or the other. But I still think the evidence is insufficient because all of his hearsay statements were just as lacking in substance as his own testimony, and that all his hearsay statements never go beyond, he touched my pee-pee anyway. So I don't think that changes the outcome. I would like to talk about the situation where Sarah Lindsay comes up to the bedroom, and one important thing to note is that IL never offers any testimony about anything that happened in this room. He has no testimony to say, and then my mom walked in the room. He never testifies to anything specific about that time in the room. And so we can say there isn't an inference there, an inference that this was for sexual gratification or arousal, because IL never testifies that that was the very moment where the touching happened, only that there's a admittedly very strange situation in this room, but that was never the moment. Well, if you back up, there's also admittedly strange where he's, it's not strange necessarily, but he specifically calls for this child, right? He does, and he does have a... He specifically wants to have this child that day for babysitting or whatever. He does, and he also has a longstanding relationship with the family in terms of babysitting for them and going to the park with them. So that's not in itself a need. That's not in his bedroom. One other point I wanted to mention was the fountain in the mall that IL's mother mentions. And it's simply another instance where this child's behavior is slightly odd. She testifies that he takes off his clothes in the mall seemingly spontaneously and jumps in the fountain, and her explanation was they had gone to the Y the day before, and he didn't understand the difference between a swimming pool and a mall fountain. And I think that's just one more thing on the pile that indicates that maybe we have, we should have some concerns about IL's reliability. So with respect to the idea that his bizarre statements can be attributed to the fact that he was bored or his attention was waning, I don't think that helps the state, because if he was so bored or he was so tired that he's now just giving answers in whatever manner he likes, that's no less of a reason to treat him as credible. It's simply more reason to doubt what he's saying. And I want to go back real briefly to this idea that let's say we believe everything IL says. We find ourselves in this awkward position where he says a number of things that are bizarre. He says a number of things that are conflicting. And when I say that the trial court's finding of fact was irrational and we're not just asking the reviewer the evidence, we really have to say that the trial court had to ignore everything that wasn't consistent with a finding of guilt. That is, the inconsistencies, the bizarre statements, the fact that IL said he was coached. You have to ignore all that and just go, I'm only going to believe the things that support a finding of guilt. And that's why this court should reverse, because the trial fact's ruling was on its face illogical and unsatisfactory, given the evidence at trial. One last point. The state said that IL's test of his account never changed. And that's true, aside from the times that it did change. And also the fact that his account was essentially, he touched my pee-pee and nothing more. So based on all that, I would ask Your Honors to reverse the judgment of the circuit court and vacate Mr. Simon's convictions. If you have no further questions. I don't believe we do. Thank you. Thank you. We appreciate briefs and arguments from counsel. We appreciate your advisement. We'll take a short break.